UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN CUTLER, o.b.o.<br>MICHAEL CUTLER (deceased)<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | NO. EDCV 12-516 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

Joan Cutler, o.b.o. Michael Cutler (deceased), filed this action on April 19, 2012. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on May 2 and 14, 2012. (Dkt. Nos. 8, 9.) On October 25, 2012, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

**I.**

**PROCEDURAL BACKGROUND**

On January 8, 2009, Michael Cutler filed applications for disability insurance benefits and supplemental security income. Administrative Record ("AR") 10, 120-25. He alleged a disability onset date of March 15, 2006. AR 10, 120, 124. The applications were denied initially and on reconsideration. AR 10, 43-46. Michael Cutler passed away on May 20, 2009.[1] AR 10, 130. His mother, Joan Cutler, requested a hearing before an Administrative Law Judge ("ALJ"). AR 60. On September 20, 2010, the ALJ conducted a hearing at which Ms. Cutler and a vocational expert testified. AR 22-42. On November 4, 2010, the ALJ issued a decision denying benefits. AR 7-18. On February 9, 2012, the Appeals Council denied the request for review. AR 1-5. This action followed.

**II.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the

---

[1] Mr. Cutler passed away after suffering neuroleptic malignant syndrome with high fever, respiratory failure, renal failure and rhabdomyolysis. AR 377.

evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

# III.
# DISCUSSION

### A.  Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

### B.  The ALJ's Findings

The ALJ found that Michael Cutler had the severe impairments of non-insulin dependent diabetes with possible neuropathy, obesity, and mild degenerative disk disease.  AR 12.  He did not have an impairment or combination of impairments that met or equaled a listing.  AR 14.  He had the residual functional capacity ("RFC") to perform light work and could lift and carry 20 pounds occasionally and 10 pounds frequently, stand, walk and/or sit for six hours in an 8-hour workday with normal breaks, and do postural activities occasionally.  *Id.*  He could not climb ladders, ropes or scaffolds, and he needed to avoid concentrated exposure to extreme heat, cold and vibration, as well as hazards.  *Id.*  He was capable of performing his past relevant work as a drug and alcohol counselor and a teacher in drug and alcohol classes.  AR 17.

### C.  Credibility

Ms. Cutler contends the ALJ did not properly consider Michael Cutler's credibility.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Michael Cutler's medically determinable impairments could reasonably be expected to produce the alleged symptoms. AR 16.

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). The ALJ made no finding of malingering. He found that the statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible to the extent they were inconsistent with his RFC assessment. AR 16.

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling ("SSR") 88-

4

13)[2] (quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

The ALJ discounted Michael Cutler's credibility for four reasons: (1) Michael Cutler's statement that he stopped working because the program ran out of funding; (2) lack of supporting objective evidence; (3) observations of a State reviewer; and (4) evidence of drug-seeking behavior. AR 14-17.

As the ALJ noted, Michael Cutler alleged an onset date of March 15, 2006, and stated he stopped working on October 15, 2006 because the program ran out of funding, as opposed to not being able to work due to his impairments. AR 10, 15, 146. Ms. Cutler acknowledges that Michael Cutler stopped working on October 15, 2006 (after the alleged onset date) because "[t]he business shut down due to low funding." *See* AR 132. She testified he continued to look for work. AR 27. The ALJ did not err in considering the reason Michael Cutler stopped working. *See Bruton v. Massanari*, 268 F.3d 824, 826 (9th Cir. 2001) (holding that ALJ properly considered fact that claimant stopped working because he was laid off, not because of medical disability). Ms. Cutler argues, however, that the relevant period extends to Michael Cutler's death in 2009 and that his degenerative disk condition was progressive.

Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). As the ALJ

---

[2] "Social Security Rulings do not have the force of law. Nevertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

5

noted, Dr. Altman, an orthopedic consultative examiner, examined Michael Cutler on March 8, 2008. AR 16, 194-97. His cervical range of motion and upper and lower extremities range of motion were normal. AR 195-96. His thoracular range of motion was decreased and he had a positive straight leg raise test, but his grip strength was intact. AR 16, 195. Dr. Altman performed a neurological examination and found normal motor strength with decreased sensation and reflexes. AR 16, 196. Dr. Altman concluded Michael Cutler could lift and carry 20 pounds occasionally and 10 pounds frequently, walk, stand and/or sit for 6 hours in an 8-hour workday, and perform frequent postural and agility activities. AR 17, 197.

The ALJ noted that X-rays of the lumbar spine from February 2008 showed moderate wedging of the vertebra, moderate degenerative disk disease of T12-L1 and L1-2, mild degenerative disk disease of the remainder of the lumbar spine, no acute fractures in L1, L3, L4, and L5, and bridging osteophytes of the lower thoracic spine. AR 17, 289. X-rays of the lumbar spine from March 2008 showed a compression fracture of L2 with some mild degenerative disease, and mild to moderate degenerative disease from L3 to S1. AR 17, 198. X-rays of the cervical spine from May 2008 showed no fracture, subluxations, or bone destructions, mild osteoarthritis/osteopenia, beginning degenerative disk disease, and no other new lesions. AR 17, 263.

In June 2008, after hurting his left hip in a fall, Michael Cutler had no motor or sensory deficit, his back was non-tender, and he had normal range of motion. AR 16, 214. An x-ray of the hip showed minimal degenerative joint disease without acute fracture or dislocation. AR 17, 248. X-rays of his lumbar spine showed chronic degenerative changes and a chronic L2 compression fracture with scoliosis, but no acute process. AR 17, 247.

In July 2008, an inspection of his back and spine was normal. AR 16, 226. He had normal range of motion without pain, he had no motor or sensory deficit,

and he walked out of the emergency room with a normal gait and in no apparent pain. AR 16, 226. A chest x-ray showed mild degenerative spondylosis of the dorsal spine and noted no acute findings. AR 17, 225.

A lumbar spine imaging report from April 4, 2009 showed multilevel thoracolumbar degenerative disk disease and mild thoracolumbar scoliosis, and chronic 29% L2 compression fracture that had been acute to subacute in June 2008.[3] AR 470. The ALJ further noted that Michael Cutler was diagnosed with diabetes mellitus, but did not have edema. AR 17, 332. Michael Cutler had numbness, but otherwise had a benign physical examination. AR 17, 332.

The ALJ noted that "[n]o treating source delineated any limitations." AR 17. The ALJ may consider that fact. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).

Ms. Cutler points out that the June 2008 x-rays indicated, in the findings section, "multilevel, moderate to severe degenerative disk disease and mild facet arthropathy." AR 247. She argues "the ALJ's ignorance of the true extent of Plaintiff's serious degenerative disc disease is a reason sufficient standing alone for finding that the ALJ's finding that Plaintiff's claims of pain were not credible."[4] JS 4. The ALJ noted the June 2008 report and its conclusions, as well as the

---

[3] The April 2009 report was submitted to the Appeals Council and made a part of the record. AR 5; *see Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence").

[4] Ms. Cutler clarified that she is not arguing the ALJ erred at step two of the sequential analysis in failing to find that a compression fracture in June 2008 was a severe impairment. JS 4. At step two, the claimant bears the burden of demonstrating a severe, medically determinable impairment that meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). The ALJ discussed the chronic L2 compression fracture in the context of degenerative disk disease that was listed at step two. AR 12, 17. Any error would be harmless because prejudice could occur only at later steps. *Burch*, 400 F.3d at 682. The RFC assessment takes into account limitations imposed by all impairments, even those that are not severe. *Id.* at 683 (citing SSR 96-8p).

chronological history of x-ray reports.[5]  AR 17.  This court cannot conclude that the ALJ was ignorant of Michael Cutler's degenerative disk disease.

The ALJ properly considered evidence of drug-seeking behavior in discounting credibility.  *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (ALJ may consider claimant's drug-seeking behavior in making adverse credibility determination).  Given the medical evidence, the ALJ found it "reasonable to conclude that [Michael Cutler's] pain complaints were exaggerated in order to obtain drugs."  AR 16.  The ALJ noted that in February 2008, Michael Cutler was observed smiling and laughing while requesting the "strongest narcotic."  AR 16, 295, 314.  On April 5, 2008, Michael Cutler visited the emergency room complaining of "Vicodin withdrawal" and asking for a refill.[6]  AR 16, 268.  He was given Vicodin, diagnosed with prescription drug abuse, and was told medications would not be refilled at the emergency room anymore.  AR 16, 271-72.  After Michael Cutler hurt his left hip in June 2008, he was observed moaning and groaning, a symptom that "suddenly stopped" when he was told he would be given Norco.  AR 16, 214.  A physician's assistant noted Michael Cutler had been seen in the emergency room for pain medication 6 times in 6 months in 2008, and further requests for narcotics would be refused.  AR 16, 237.  In July 2008, Michael Cutler demanded repeatedly to have Dilaudid.  AR 16, 223, 226.  Security was called and he "eloped" from the hospital with a normal gait and in no apparent pain.[7]  AR 16, 223, 226.

---

[5] Moreover, the April 2009 x-ray report did not use the "moderate to severe" language to describe the multilevel thoracolumbar degenerative disk disease.  AR 470.

[6] Despite the record evidence, Ms. Cutler argues that Michael Cutler was not being treated "with Vicodin or other drugs for which an addiction was noted."  JS 7.

[7] Ms. Cutler argues that the ALJ erred in finding that Michael Cutler had a history of drug use and recent alcohol use.  Although the ALJ may have cited a page on which drug use and recent alcohol use were crossed off, the record

8

Ms. Cutler contends "[t]he ALJ should have considered 'the type and effectiveness' of [Michael Cutler's] medications." JS 4 (citing SSR 96-7p, 1996 WL 374186 *4). She contends the ALJ should have considered the "heavy pain medication as used over an extended time by [his] treating physicians." JS 5. Contrary to Ms. Cutler's contentions, the ALJ noted Michael Cutler's use of pain medication such as Vicodin and Norco. AR 15-16. As discussed above, the ALJ noted that Michael Cutler requested the "strongest narcotic" and repeatedly sought drugs.

The ALJ discounted Michael Cutler's credibility due to the observations of a State reviewer that Michael Cutler had no difficulty with understanding, coherency, concentrating, sitting, standing, walking, using his hands, and writing. AR 15, 143. Even assuming the ALJ erroneously relied on the observations of the State reviewer, remand is not necessarily warranted. In *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2007), the Ninth Circuit concluded that two of the ALJ's reasons for making an adverse credibility finding were invalid. When an ALJ provides specific reasons for discounting the claimant's credibility, the question is whether the ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning and *ultimate credibility determination.*" *Id.* at 1162 (emphasis in original). In light of the ALJ's valid reasons for discounting Michael Cutler's credibility, substantial evidence supports the ALJ's credibility finding. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (any error was harmless even if record did not support one of four reasons for discounting claimant's testimony).

Here, the ALJ's credibility finding is supported by substantial evidence and is legally valid based on his remaining reasoning and ultimate credibility

---

contains evidence noting his history of drug and alcohol abuse, including recent drug abuse and suspected drug overdose. AR 16, 28, 202, 237, 268, 272, 315, 317, 423.

determination. When, as here, "the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

### D. Development of the Record

Ms. Cutler contends the ALJ did not properly develop the record. She argues the ALJ should have recontacted Michael Cutler's treating physicians after the March 2008 consultative examination to ascertain the extent of his limitations.

The ALJ made no finding that the evidence was ambiguous or that the record was inadequate to allow for proper evaluation. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). As Ms. Cutler acknowledges, the ALJ ordered a consultative examination in March 2008. *See Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001) ("One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination."). The record contains treatment records through February 2, 2009. AR 331-49. Treatment records from February 2009 through Michael Cutler's death on May 20, 2009 were provided to the Appeals Council. AR 4, 375-485. Under these circumstances, the ALJ did not have a duty to recontact Michael Cutler's treating physicians. The ALJ did not err.

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: February 5, 2013

ALICIA G. ROSENBERG
United States Magistrate Judge